IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ANTOINE MOSELEY, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | Case No. 16 CV 211 |
| v. | ) | |
| | ) | Judge Robert W. Gettleman |
| KIMBERLY SMITH, | ) | |
| Warden, Taylorville Correctional Center, | ) | |
| | ) | |
| Respondent. | ) | |

## <u>**MEMORANDUM OPINION AND ORDER**</u>

Petitioner Antoine Moseley is in the custody of the Illinois Department of Corrections. After a bench trial in 2009, a state court judge convicted petitioner of one count of aggravated battery and two counts of aggravated criminal sexual assault. The Illinois Appellate Court affirmed his convictions and the Illinois Supreme Court denied him leave to appeal. He filed a postconviction petition in state court. The trial court denied it, the Illinois Appellate Court summarily affirmed, and the Illinois Supreme Court again denied leave to appeal.

Petitioner seeks a writ of habeas corpus under 28 U.S.C. § 2254, arguing that his custody violates the Constitution of the United States. His habeas corpus application presents six categories of claims: (1) the State put him twice in jeopardy; (2) the State concealed evidence that was favorable to him; (3) the trial prosecutor vouched for the complaining witness's credibility and exaggerated her injuries; (4) the evidence was insufficient to convict him; (5) his lawyers at every level were ineffective; and (6) the cumulative effect of these errors deprived him of a fundamentally fair trial.

For the reasons described below, the court denies petitioner's application for a writ of habeas corpus and declines to issue a certificate of appealability. The court holds that:

1. The State has waived the requirement that petitioner exhaust his state court remedies.

2. For all but one claim, the State has waived the defense of procedural default. The State asserts that petitioner has procedurally defaulted his claim that his lawyer was ineffective for failing to call Detective Fanning as a defense witness.

3. This court's review is de novo for: (1) petitioner's double jeopardy claim; (2) petitioner's Brady claims; (3) whether petitioner procedurally defaulted his claim that his lawyer should have called Detective Fanning; and (4) petitioner's claim that his state postconviction lawyer was ineffective.

4. This court's review is deferential under 28 U.S.C. § 2254(d) for petitioner's other claims.

5. Petitioner procedurally defaulted his claim that his lawyer should have called Fanning.

6. All of petitioner's claims fail. The claims reviewed under the deferential standard of 28 U.S.C. § 2254(d) would fail even if reviewed de novo.

7. Petitioner has not made a substantial showing that his constitutional rights were denied.

## **BACKGROUND**

The trial court found facts at trial and on postconviction review that petitioner has not rebutted by clear and convincing evidence. This court thus presumes those facts true, 28 U.S.C. § 2254(e)(1), and summarizes them below.

### **Doe testifies that petitioner beat and sexually assaulted her**

Doe was the complaining witness.* She testified that on May 18, 2005, she and petitioner met and exchanged phone numbers. Petitioner called Doe that night and persuaded her to go out with him. Petitioner and his cousin, Zuke, picked her up from her home around 10 p.m. and

_____

* Doe is a pseudonym.

drove to a liquor store, a pizzeria, and a bar. Petitioner and Zuke drank scotch and vodka. Petitioner tried to get Doe to drink. She drank one cup of vodka.

Petitioner drove Zuke home. Doe asked petitioner to take her home. He tried to touch her breasts and legs. She pushed him away and got out of the car. He persuaded her to get back in, saying, "Come on. I'll take you home." He drove to a secluded location nearby and forced her into the back seat. He punched her in the face five times and choked her with both hands around her neck. Doe was screaming, crying and trying to stop him. Petitioner said, "Shut the fuck up or I'll kill you." He turned her onto her stomach and pulled down her pants. Hoping to stop him from raping her, she laughed and said, "I just hope you don't catch something." She heard him open a condom wrapper. Petitioner used his penis to contact her anus and vagina.

Doe was so scared that she urinated in the back seat. Petitioner pushed Doe out of his car face first. She hit a pole. She suffered trauma and swelling to her face, nose, cheeks, and chin; she bled from her nose, mouth, hand, and legs. A tooth was pushed back and became crooked. She lost three fingernails. DNA testing later showed that Doe left blood and at least one of her fingernails in petitioner's car.

Doe kicked her pants off and ran. She had memorized the make and model of petitioner's car and the license plate. She called 9-1-1 from her cell phone and gave that information to the operator. Police arrived and took Doe to a hospital, where evidence was collected, including swabs from her vagina and anus. By then it was early morning on May 19, 2005. At the hospital, Doe received many calls from petitioner. He said that he was sorry and begged her not to call the police. He offered money. She asked him to bring him the purse and keys that she had left in his car—or money for the keys. Petitioner came to the hospital with a money order for $99. He was arrested later that afternoon.

### Dr. Maloney testifies that Doe's injuries were consistent with sexual assault

Dr. William Maloney examined Doe. The State called him as an expert in emergency room medicine. Dr. Maloney testified that Doe arrived at the hospital at 3:35 a.m., distraught but alert. She said that about an hour before, she was assaulted by a man who hit her in the face and tried to penetrate her vagina and rectum. She was unsure if it was his finger or penis. She thought the man put on a condom and ejaculated, but she was not sure. She denied drinking alcohol.Dr. Maloney opined that Doe's injuries were consistent with her statement. Those injuries included nasal tenderness, soft tissue swelling, a swollen left cheek, trauma to her face, and dried blood in her nose. A pelvic exam showed a small, linear abrasion between her vagina and the anus, close to the anus, arriving from the anal area.

Dr. Maloney took two sets of notes. One set was made electronically and had templates for patient complaints. On that set, Dr. Maloney did not check positive for laceration, discharges, or blood on the rectum. He had neglected to check positive for laceration. His other set of notes documents Doe's anal abrasion in writing and on a diagram.

### Petitioner testifies that he beat but did not sexually assault Doe

Petitioner testified that he picked Doe up for a date. She drank beer and a pint of vodka. They kissed and tried to have intercourse, but he could not get an erection. He asked her to perform oral sex. She refused. She uttered vulgarities, poked him in the face, and urinated in his car. Petitioner punched her in the face and struck her nose with the palm of his hand, causing her nose to bleed. Blood was "flying out of her mouth." Petitioner told Doe to "get the fuck out" of his car, grabbed her by her neck, and threw her out of the car in the rain, "face first," into a pole. He brought her a money order at the hospital. He did not want his wife to find out what happened.

**The trial judge convicts petitioner of battery and sexual assault**

The trial judge found that the night started as a consensual date. After petitioner drove Zuke home, he and Doe kissed for about an hour and a half. Doe drank that night but was not drunk: she gave the 9-1-1 operator details about petitioner's car, clothes, height, weight, and tattoos; all those details were accurate and corroborated by other evidence. She could not have remembered those details so accurately if she had been drunk.

The trial judge disbelieved petitioner's testimony that Doe poked him in the face and called him names. The judge found that petitioner felt entitled to oral sex because he had spent time and money on her. He asked her for oral sex. She refused. He got angry and punched her in the face. Blood flew out of her nose. He choked her with both hands around her neck and said to "shut the fuck up" or he would kill her. He pinned her and held her face down. She heard him open a condom wrapper. He penetrated her anus with his penis, causing an abrasion starting from her rectum and ending between her anus and vagina. Petitioner did not penetrate her vagina.

The trial judge also disbelieved petitioner's testimony that he and Doe were engaged in mutual combat. Petitioner sustained no injuries—no marks, blood, bruises, or swelling. Doe's injuries were severe. Photos showed cuts and bruises on her face and red marks around her neck. Her nose was swollen and filled with dry blood. Her lips and cheeks were swollen and bloody. Her tooth was broken. Her hands and fingers were bruised and bloody, as were her legs and knees. She lost three fingernails. Her blood was found in the back of petitioner's car on the seat, window, and door handle. The judge found that Doe tried to stop petitioner from sexually assaulting her and that she struggled for her life.

The trial judge found petitioner not guilty on eight counts and guilty on the other five. Petitioner's lawyer moved for a new trial on the five counts of conviction; the judge vacated two. Petitioner was convicted of three counts:

> Count 4: aggravated criminal sexual assault causing bodily harm (rectal tearing), 720 ILCS 5/12-14(a)(2) (2003);
>
> Count 9: aggravated criminal sexual assault while committing or attempting to commit another felony (aggravated battery), 720 ILCS 5/12-14(a)(4) (2003); and
>
> Count 12: aggravated battery causing great bodily harm (punching Doe's face), 720 ILCS 5/12-4(a) (2003).

The trial judge merged the sexual assault counts and sentenced petitioner to eighteen years imprisonment—fourteen years for the two counts of sexual assault and four years for the one count of aggravated battery.

## **DISCUSSION**

Petitioner seeks a writ of habeas corpus. When deciding a claim raised in a habeas corpus application, the federal court reviews the last state court decision "that provide[s] a relevant rationale." Wilson v. Sellers, 138 S. Ct. 1188, 1192 (2018). The federal court may grant the application for habeas corpus only if the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, or was based on an unreasonable determination of facts." Mertz v. Williams, 771 F.3d 1035, 1039–40 (7th Cir. 2014) (quotation marks omitted); 28 U.S.C. § 2254(d)(1)–(2). If for a given claim there has been no decision on the merits, the federal habeas court applies the pre-Anti-Terrorism and Effective Death Penalty Act standard—de novo. Caffey v. Butler, 802 F.3d 884, 894 (7th Cir. 2015); 28 U.S.C. § 2243.

Because petitioner has no lawyer, the court construes his pleadings liberally. Wyatt v. United States, 574 F.3d 455, 459 (7th Cir. 2009). Petitioner's application for a writ of habeas

corpus presents 36 claims. The State agrees that all 36 claims have been exhausted and thus expressly waives the requirement that petitioner exhaust his state court remedies. 28 U.S.C. § 2254(b)(1)(A); 28 U.S.C. § 2254(b)(3); see Eichwedel v. Chandler, 696 F.3d 660, 671 (7th Cir. 2012). And because the State asserts the defense of procedural default against only one of petitioner's claims, it has otherwise waived that defense. See Bonner v. DeRobertis, 798 F.2d 1062, 1066 n.3 (7th Cir. 1986).

Petitioner's claims fall into six categories: (1) double jeopardy; (2) failure to disclose favorable evidence; (3) prosecutorial misconduct; (4) sufficiency of the evidence; (5) ineffective assistance of counsel; and (6) cumulative error. The last state court decision providing a relevant rationale is the postconviction court's denial of relief under the Illinois Post-Conviction Hearing Act, 725 ILCS 5/122-2. The court holds that all of petitioner's claims fail. Whether reviewed de novo or under the deferential standards of 28 U.S.C. § 2254(d), none of petitioner's claims entitles him to a writ of habeas corpus.

## 1    Double jeopardy (Claim 1)

Petitioner first claims that the Fifth Amendment's double jeopardy clause barred the State from prosecuting him on Count 4 of the indictment. Counts 3 and 4 charged petitioner with committing aggravated criminal sexual assault, causing bodily harm. ILCS 720 5/12-14(a)(2). The counts differed in the bodily harm alleged: Count 3 alleged "a broken nose and facial contusions"; Count 4, "rectal tearing." The trial judge acquitted on Count 3 and convicted on Count 4. Petitioner argues that once the trial judge acquitted him on Count 3, the double jeopardy clause barred the State from prosecuting him on Count 4.

The court reviews petitioner's double jeopardy claim de novo. See Caffey, 802 F.3d at 894 (7th Cir. 2015). No state court ever decided petitioner's double jeopardy claim on the

merits. The state postconviction court rejected it "as a result of sheer inadvertence," not "based on the intrinsic right and wrong of the matter." Johnson v. Williams, 568 U.S. 289, 302–03 (2013). It held that petitioner's double jeopardy claim "was made on direct appeal, so is res judicata and frivolous as it has no basis in law or fact." But the postconviction court's premise was incorrect. The Illinois Appellate Court on direct appeal did not reject a double jeopardy claim; it rejected a claim that the verdicts on Counts 3 and 4 were legally inconsistent under state law. See Illinois v. Moseley, No. 1-09-1452, at ¶¶ 28–30, 2011 WL 9692681, at *6 (Ill. App. 2011).

Petitioner's double jeopardy claim fails on de novo review. The double jeopardy clause barred the State from putting him "twice . . . in jeopardy of life or limb." It did not bar the State from prosecuting him under alternative theories in the same trial. See Schad v. Arizona, 501 U.S. 624, 631–32 (1991). The State was free to argue that petitioner caused both a broken nose and rectal tearing. What the double jeopardy clause barred was "relitigation between the same parties of issues actually determined at a previous trial . . . ." Ashe v. Swenson, 397 U.S. 436, 441–42 (1970) (emphasis added). There was no relitigation and no previous trial. The State presented two theories in a single trial. That single trial did not put petitioner twice in jeopardy. See Williams v. Warden, 422 F.3d 1006, 1010–12 (9th Cir. 2005) (rejecting a similar double jeopardy claim).

## 2 State's failure to disclose favorable evidence (Claims 3 and 4)

Petitioner next claims that the State failed to disclose two oral statements. A criminal defendant's right to due process of law requires the State to disclose favorable evidence "material to the defendant's guilt or punishment." Sims v. Hyatte, 914 F.3d 1078, 1087 (7th Cir. 2019); Brady v. Maryland, 373 U.S. 83, 87 (1963). Favorable evidence includes impeachment evidence. United States v. Bagley, 473 U.S. 667, 676 (1985). Evidence is material when "there is

a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." <u>Bagley</u>, 473 U.S. at 682. The State need not disclose "who it plans to call to testify" or "what evidence it plans to present." <u>United States v. Agyemang</u>, 876 F.2d 1264, 1270 (7th Cir. 1989).

Citing <u>Brady</u>, petitioner claims that the State failed to disclose two oral statements: (1) Dr. Maloney's statement that his first set of physician's notes was incorrect; and (2) Doe's statement that she was "certain" that petitioner penetrated her anus and vagina with his penis. The court holds that neither of petitioner's <u>Brady</u> claims entitles him to a writ of habeas corpus.

### 2.1    Dr. Maloney's oral statement that his physician's notes were incorrect

Petitioner first claims that the State failed to disclose a statement made by Dr. Maloney. After examining Doe, Dr. Maloney completed two sets of physician's notes. One set had preprinted patient complaints that he could mark positive or negative—the doctor testified that he "erroneously did not check the laceration one and make it positive." He documented Doe's abrasion in the other set of notes. On re-cross examination, Dr. Maloney testified that he and the prosecutor had discussed the discrepancy:

> Q.  Did you tell the Assistant State's Attorney in this case, Ms. Welkie, that in fact you had come upon this epiphany that you had made a mistake with respect to the reports generated on May 19th, '05, that they were incorrect?
>
> A.  We discussed it. And I told her I thought it was incorrect.

After the doctor finished testifying, petitioner's lawyer objected to what he believed was "a clear discovery violation," stating that he "never received . . . anything memorializing or codifying the fact that a State's witness had been interviewed . . . with respect to the preparation of his notes . . . ." The prosecutor responded that there were no such notes because her conversation with Dr. Maloney happened that morning. The trial judge declined to find a

discovery violation. She reasoned that the conversation's timing was irrelevant: petitioner's lawyer had received the notes years before and "had ample time to try to clear that up with him [Dr. Maloney] before today."

Petitioner claims that the State violated his right to due process by failing to disclose Dr. Maloney's oral statement to the prosecutor. His right to due process was violated if the doctor's statement was: (1) favorable to the defense; (2) material; and (3) disclosed too late for the defense to make use of it. Sims, 914 F.3d at 1087 (7th Cir. 2019); United States v. Higgins, 75 F.3d 332, 335 (7th Cir. 1996). Because the state postconviction court inadvertently did not address this claim, this court reviews de novo. See Caffey, 802 F.3d at 894 (7th Cir. 2015). Petitioner's Brady claim fails on de novo review.

**Favorable.** Petitioner argues that Dr. Maloney's statement was undisclosed and would have affected the trial. Yet he admits that he "has never argued that Dr. Maloney's oral statement was favorable to the defense"—apparently not understanding that he must do so to make out a Brady claim. That is why it fails. Dr. Maloney's oral statement was not favorable to the defense. The doctor's first set of notes was favorable because the option for "laceration" was unchecked. That set of notes was properly disclosed before trial.

The doctor's later oral statement was not favorable. It tended to incriminate petitioner. By identifying his first set of notes as erroneous, he bolstered the veracity of his second set. And that second set of notes corroborated the doctor's testimony that he saw an abrasion. The doctor's oral statement was a prior consistent statement. It was inculpatory evidence the State did not need to disclose. See Weatherford v. Bursey, 429 U.S. 545, 559–60 (1977) (rejecting a claim that "the State should have revealed that a government informer would present the eyewitness testimony of a particular agent against the defendant at trial.").

**Material.** Dr. Maloney's statement was also immaterial. There was no reasonable probability of a different outcome. Petitioner and his lawyer knew long before trial that Dr. Maloney would be testifying for the State. They knew about the discrepancy in his notes and knew that they would need to use that discrepancy on cross examination. And that is what petitioner and his lawyer did. Their strategy would not have changed had they learned earlier that the doctor considered the first set of notes "incorrect."

**Undisclosed.** Even if the doctor's statement had been favorable and material, it did not come too late—"[d]isclosure even in mid-trial suffices if time remains for the defendant to make effective use of the exculpatory material." <u>Higgins</u>, 75 F.3d at 335 (7th Cir. 1996). That was exactly what happened at trial. Petitioner's lawyer learned during re-direct examination that Dr. Maloney considered the first set of notes incorrect. On re-cross examination, petitioner's lawyer attacked the doctor's "epiphany." He made effective use of the doctor's statement and did not need earlier disclosure to do so.

### 2.2    Doe's oral statement that she was certain she was penetrated

Petitioner's other <u>Brady</u> claim is that the State failed to disclose an oral statement made by Doe. Doe testified on direct examination that she "heard a condom wrapper tear open" and then "felt his penis to my anus." When the prosecutor asked if petitioner's penis contacted any other part of her, she said, "Yes, my vagina. Right after the anus." Doe admitted on cross examination that she had told others that: (1) she was unsure if petitioner used his penis or his fingers; and (2) she was unsure if petitioner penetrated her vagina or her anus. She nonetheless testified that she was "certain" that petitioner penetrated her "both anally and vaginally with his penis." When petitioner's lawyer asked if she had ever told anyone about her certainty, the following exchange took place:

Q. [W]ho did you tell in connection with this investigation that you were certain that he had penetrated you both vaginally and anally with his penis?

A. Well, when I was finally able to come to, you know, the whole situation myself I was able to admit it to my state's attorney.

Q. When you say state's attorney you mean Ms. Welkie?

A. Yes.

Q. And when did you tell Ms. Welkie the fact that you were certain that he had penetrated you with his penis in your vagina and anus, when did that take place?

A. Today.

Petitioner claims that the State violated his right to due process by failing to disclose Doe's oral statement to the prosecutor. The state postconviction court treated petitioner's claim as a complaint that he lacked notice of Doe's intent to allege both anal and vaginal penetration. That was not petitioner's claim. He argued in his state postconviction petition that Doe had become more certain that: (1) petitioner actually penetrated her anus and vagina; and (2) petitioner used his penis to so. He argued that the State should have disclosed her statement:

> [T]he State had an obligation to inform the defense that their chief witness and accuser was changing her story the day of trial. That she was now claiming that the defendant had actually penetrated her anus and vagina, where previously she had stated that the defendant had attempted to or tried to rape her, and that she was also changing her story stating that she was now suddenly sure that the defendant had used his penis, where previously she had stated throughout this ordeal that she was unsure as to whether or not the defendant used his finger or penis.

Because the state postconviction court inadvertently did not address petitioner's Brady claim, this court reviews de novo. See Caffey, 802 F.3d at 894 (7th Cir. 2015). His right to due process was violated if Doe's statement was: (1) favorable to the defense; (2) material; and (3) disclosed too late for the defense to make use of it. Petitioner's claim fails on de novo review.

**Favorable.** Doe's oral statement was potentially favorable to the defense. Taken in isolation, it incriminates; taken with Doe's earlier statements, it may exculpate. Doe was not so certain that petitioner used his penis or that he actually penetrated her anus or vagina when she talked to Dr. Maloney and several police officers. Her statement to the prosecutor that she was "certain" conflicted with those earlier statements and could have been used to impeach her. Doe's statement—unlike Dr. Maloney's—did not help explain an existing inconsistency. It created one. And that inconsistency might have been favorable to the defense. A factfinder may well find a witness who flip-flops between doubt and certainty less credible than a witness who consistently testifies that she is unsure.

**Material.** Doe's statement was nonetheless immaterial. Petitioner's lawyer successfully impeached Doe. After she testified that petitioner penetrated her anus and vagina, petitioner's lawyer on cross examination asked her many questions—by the court's count, 36 questions—about her purported certainty. Here are a few examples, with minor alterations not noted:

> As you testified today you are certain that he penetrated you with his penis in your vagina, correct?
>
> And you testified that you are certain that he penetrated you anally with his penis, correct?
>
> You told Dr. Maloney that you were unsure as to whether or not he had penetrated you anally with his penis, correct?
>
> You told Dr. Maloney that you were unsure as to whether or not he had penetrated you vaginally with his penis, correct?
>
> You told Dr. Maloney that you were unsure as to whether or not he had penetrated you anally with his fingers?
>
> You were unsure as to whether or not he had penetrated you with his fingers vaginally, you told Dr. Maloney those statements too, correct?

You were sure that he had penetrated you both vaginally and anally with his penis, you just testified to that?

When you spoke with that first detective on May the 19th, 2005, you told that detective that you couldn't say for sure whether he had penetrated you with his fingers or penis, isn't that correct?

You were not sure whether or not he had penetrated you with his fingers or his penis, you told those detectives that as well?

The first time that you ever stated to any individual that you are certain that my client penetrated you both anally and vaginally with his penis is today?

The first time any individual ever learned of the fact that you were certain that he had penetrated you anally and vaginally with his penis was to the assistant state's attorney today, correct?

These questions impugned Doe's credibility. They led the trial judge to acquit petitioner of the counts alleging vaginal penetration. The judge was left with reasonable doubt on those counts because: (1) Doe "did not tell Dr. Maloney . . . about this type of contact"; (2) Doe did "not tell[ ] [a detective] about this behavior"; (3) Doe told another detective that "she was penetrated vaginally and anally by the defendant, but she was not sure if it was by the defendant's penis or finger"; and (4) Doe "testified . . . [that] she was sure her vagina was penetrated by the defendant's penis, but she only became sure of this on the day she testified."

The counts alleging anal penetration are a different story. The judge convicted petitioner of those counts because, in part, "There was an abrasion arising from the rectum of [Doe] between her anus and vagina that corroborates her testimony." Even if petitioner's lawyer could have used Doe's oral statement to sharpen his cross examination, impeaching her more thoroughly would not have undermined the strength of the corroborating medical evidence. The outcome would not have been different had Doe's statement been disclosed that morning instead of during cross examination.

**Undisclosed.** Nor was Doe's statement disclosed too late for petitioner's lawyer to make use of it. Her revelation that she had talked to the prosecutor that day was not a Perry Mason moment that forced petitioner's lawyer to revamp the defense strategy. He had already asked Doe a long series of questions attacking her certainty and had already successfully impeached her. After Doe testified that she "was able to admit it to my state's attorney," petitioner's lawyer opted to ask Doe just three more questions:

> Q. [W]ho did you tell in connection with this investigation that you were certain that he had penetrated you both vaginally and anally with his penis?
>
> A. Well, when I was finally able to come to, you know, the whole situation myself I was able to admit it to my state's attorney.
>
> Q. When you say state's attorney you mean Ms. Welkie?
>
> A. Yes.
>
> Q. And when did you tell Ms. Welkie the fact that you were certain that he had penetrated you with his penis in your vagina and anus, when did that take place?
>
> A. Today.
>
> Q. [T]he first time any individual ever learned of the fact that you were certain that he had penetrated you anally and vaginally with his penis was to the assistant state's attorney today, correct?
>
> A. She's one, yes.

Knowing about Doe's newfound certainty in advance would not have empowered petitioner's lawyer to do much more damage to her credibility. Petitioner's lawyer did not need earlier disclosure to make effective use of Doe's change of heart.

## 3    Prosecutorial misconduct (Claims 10 and 31)

Petitioner's complaints about the prosecutor's conduct go beyond alleged <u>Brady</u> violations. He also claims that the prosecutor violated his right to a fair trial by: (1) vouching for Doe's credibility; and (2) misstating that Doe sustained a "fissure" between her vagina and anus.

Prosecutors may not "vouch[ ] for the credibility of witnesses" or "misstat[e] the facts." United States v. Young, 470 U.S. 1, 18 (1985); Berger v. United States, 295 U.S. 78, 84 (1935). When prosecutors do so, they threaten the criminal defendant's right to have his guilt or innocence be decided "based upon the evidence developed at the trial." Turner v. Louisiana, 379 U.S. 466, 472 (1965). A defendant is deprived of a fair trial when the prosecutor's misconduct "so infect[s] the trial with unfairness as to make the resulting conviction a denial of due process." Donnelly v. DeChristoforo, 416 U.S. 637, 643 (1974).

The state postconviction court rejected both prosecutorial misconduct claims on their merits. It rejected the vouching claim when it held that petitioner's trial and appellate lawyers were not ineffective. The postconviction court reasoned that none of the alleged errors— including the failure to raise petitioner's prosecutorial misconduct arguments—would have changed the outcome. See Sturgeon v. Chandler, 552 F.3d 604, 611–12 (7th Cir. 2009) (holding that the state court "effectively reached" the merits of the habeas petitioner's competency claim when it decided his ineffective assistance of appellate counsel claim). The postconviction court independently rejected petitioner's misstatement claim. It reasoned that the prosecutor "did not substantially misconstrue the evidence" and that the misstatement did not "affect[ ] the trial court's ruling, which accurately recalled the testimony of [Doe's] injuries."

Because the state postconviction court decided both prosecutorial misconduct claims on their merits, this court's review is deferential under 28 U.S.C. § 2254(d). The court holds that the postconviction court's rejection of petitioner's prosecutorial misconduct claims was based neither on an unreasonable application of clearly established federal law nor on an unreasonable determination of the facts presented at trial.

### 3.1    Vouching for Doe's credibility

Petitioner first claims that the prosecutor vouched for Doe's credibility during re-direct examination. Petitioner's lawyer on cross examination had damaged Doe's credibility—if she was so certain that she had been penetrated by petitioner's penis, then why did she tell Dr. Maloney and the police officers that she was unsure if he used his penis or one of his fingers? This is one way that the prosecutor tried to rehabilitate Doe:

> Q.  [Y]ou told these people that it could have been a penis or a finger, right?
>
> A.  Right.
>
> Q.  Why did you do that, [Doe]?
>
> A.  Because I figured if they thought it was a finger they wouldn't look down on me, they couldn't judge me, they couldn't think that I'm a -- it is just a matter of the fact that the word "rape" is just I am not comfortable with, I'm embarrassed, I'm ashamed, I just didn't want anyone to know.
>
> Q.  Now, what is your ethnicity?
>
> A.  I am Assyrian [C]hristian.
>
> Q.  And did it have something to do with also the way you were raised?
>
> A.  Yes, absolutely.

Petitioner argues that "the prosecutor's line of questions was deceptively painting a wholesome picture of [Doe] while also indirectly vouching for her character." Not so. The prosecutor did not vouch. Prosecutors vouch for a witness's credibility when they "rel[y] on evidence not in the record but that appear[s] to be within [their] personal knowledge." Jordan v. Hepp, 831 F.3d 837, 847–48 (7th Cir. 2016). Vouching can make a trial unfair because it "convey[s] the impression that evidence not presented to the jury, but known to the prosecutor, supports the charges against the defendant." Young, 470 U.S. at 18. Vouching also "carries with

it the imprimatur of the Government and may induce the jury to trust the Government's judgment rather than its own view of the evidence." Id. at 18–19.

The prosecutor did not rely on evidence outside the record. Just the opposite. By eliciting Doe's testimony, the prosecutor expanded the record. Doe testified that she was ashamed about having been penetrated by a penis and explained that part of her shame stemmed from her community's beliefs about sexual morality. Bringing out that testimony to rehabilitate Doe was not improper. Doing so did not imply that the prosecutor had secret information about Doe's credibility and could not have been construed as a plea to trust the State. The state postconviction court reasonably found no prosecutorial misconduct, much less misconduct that "so infected the trial with unfairness as to make the resulting conviction a denial of due process." DeChristoforo, 416 U.S. at 643.

## 3.2 Misstating that Doe sustained a "fissure" between her vagina and anus

Petitioner has a second prosecutorial misconduct claim: the prosecutor misstated that Doe sustained a "fissure" between her vagina and anus. Dr. Maloney testified that Doe sustained not a fissure, but a "small, linear abrasion." The misstatement happened during closing arguments. The prosecutor urged the judge to find that petitioner used his penis to penetrate Doe's anus (emphasis added):

> [T]he law says that when the sex organ of one person touches the sex organ or anus of another, contact has to only be however slight. . . . [T]his charge is charged intrusion of penis. Intrusion penis to anus . . . . all the way through [Counts] 8, 9 and 10. We have proven that. There was that linear abrasion, fissure or abrasion between her vagina and her anus. There is testimony that something happened down there.

The state postconviction court denied relief. It reasoned that the prosecutor "did not substantially misconstrue the evidence" and that the prosecutor's misstatement did not "affect[ ] the trial court's ruling, which accurately recalled the testimony of [Doe's] injuries."

This court agrees that the prosecutor's misstatement was minor. The misstated word—"fissure"—was sandwiched between two accurate references to an "abrasion." The misstatement was buried in the sentence's least emphatic position: its middle. It was uttered as part of a nonessential parenthetical phrase. And the misstatement could not have affected the outcome—the factfinder needed only to find that petitioner's penis made contact, "however slight," with Doe's anus. 720 ILCS 5/12-12(f) (2000). At worst, the misstatement could have made a factfinder think that Doe's injury was more serious than it really was; it could not have led to an acquittal. It did not deprive petitioner of his right to a fair trial and it was not unreasonable for the state postconviction court to so hold.

## 4        Sufficiency of the evidence (Claims 2, 5–8, 10, and 33–35)

The rest of petitioner's claims mostly attack the sufficiency of the evidence. Petitioner faults the judge for: (1) unreasonably finding certain facts; and (2) misstating the evidence. The state postconviction court rejected those claims, reasoning that petitioner was attempting to retry his case. This court holds that the postconviction court's denial of relief was based neither on an unreasonable application of clearly established federal law nor on an unreasonable determination of the facts presented at trial.

### 4.1        Unreasonable factual findings

Petitioner's complaints about the trial judge's findings are challenges to the sufficiency of the evidence. The Fourteenth Amendment's due process clause protects a criminal defendant against conviction "except upon proof beyond a reasonable doubt of every fact necessary" to

establish the offense charged. <u>In re Winship</u>, 397 U.S. 358, 364 (1970). A convicted defendant seeking relief from a factfinder's "irrationality or error[s]" may ask a court to decide whether the evidence at trial was sufficient to convict him. <u>United States v. Powell</u>, 469 U.S. 57, 67 (1984).

Evidence is sufficient when "<u>any</u> rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." <u>Jackson v. Virginia</u>, 443 U.S. 307, 319 (1979) (emphasis in original). It is "the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." <u>Id.</u> If the factfinder convicts, its "role as weigher of the evidence is preserved through a legal conclusion that, upon judicial review, <u>all of the evidence</u> is to be considered in the light most favorable to the prosecution." <u>Id.</u> (emphasis in original). The reviewing court may neither "substitute [its] own credibility assessment for that of the factfinder," nor "consider whether there is conflicting evidence to support other theories of the case." <u>United States v. McCaffrey</u>, 181 F.3d 854, 856 (7th Cir. 1999).

Petitioner argues that the trial judge unreasonably found the following facts:

| Finding | Evidence | Argument |
| --- | --- | --- |
| Petitioner penetrated Doe's anus | Dr. Maloney testified that Doe had a small, linear abrasion between her vagina and anus, arriving from the anal area; Dr. Maloney did not "confirm" the abrasion's size or when it was sustained | The trial judge could not reasonably have found that petitioner penetrated Doe's anus without a "confirmatory test" |
| Petitioner penetrated Doe's anus | Doe: (1) testified on direct examination that petitioner's penis "touched" and was "able to penetrate" her anus; (2) testified on cross examination that petitioner "penetrated" her anus; and (3) testified on redirect examination that petitioner's "had contact with his penis to [her] anus" and "fe[lt] it inside" her | The trial judge unreasonably accepted Doe's testimony because she never testified during direct examination that petitioner penetrated her anus; she started doing so only on cross examination |
| Petitioner penetrated Doe's anus, but not her vagina | Doe: (1) told Dr. Maloney that petitioner attempted to penetrate her vagina and her anus; (2) became "certain" that petitioner penetrated her vagina and anus only on the day of trial; and (3) had an abrasion near her anus | The trial judge failed to remember all the evidence; had the judge done so, she would have found that petitioner penetrated neither Doe's anus nor her vagina |
| Petitioner unwrapped a condom and penetrated Doe's anus with his penis | Doe testified that she heard a condom wrapper open before she felt petitioner penetrate her anus | The trial judge unreasonably inferred that petitioner unwrapped a condom because there were alternative explanations for the sound that Doe heard |

| Finding | Evidence | Argument |
| --- | --- | --- |
| Petitioner felt entitled to oral sex and demanded it; he got angry when Doe refused and beat her | Petitioner testified that he asked Doe for oral sex but that he did not mind when she refused; Doe was badly injured | The trial judge unreasonably speculated about petitioner's motive based on incompetent evidence |
| Some of Doe's testimony was credible | Doe testified that: (1) she got back in the car even though petitioner supposedly had just touched her breasts and legs without her consent; (2) she got back in the car even though she was an Assyrian Christian with conservative beliefs about sexual morality; (3) she laughed and said, "I just hope you don't catch something," even though petitioner supposedly was raping her; and (4) she asked petitioner to come to the hospital even though he supposedly had raped her just hours before (and then petitioner did, in fact, go to the hospital) | The trial judge could not reasonably have found any of Doe's testimony credible; her testimony was "contrary to the laws of human experience" |

| Finding | Evidence | Argument |
|---|---|---|
| Some of Doe's testimony was credible | Doe: (1) did not tell the 9-1-1 operator that petitioner penetrated her vagina and anus; and (2) told Dr. Maloney that she was unsure if petitioner penetrated her vagina and anus; yet (3) became "certain" that petitioner penetrated her vagina and anus only on the day of trial | The trial judge could not reasonably have found any of Doe's testimony credible; it was inconsistent in many ways |
| | Doe: (1) told a police officer that she "believed" petitioner pulled out a condom and "thought" she heard him unwrap it; and (2) told Dr. Maloney that she "thought it was possible" that petitioner used a condom; yet (3) testified that she "heard a condom wrapper tear open" | |
| | Doe denied to Dr. Maloney that she had consumed any alcohol, yet testified that she had a cup of apple vodka mixed with Red Bull | |
| | Doe testified that she told two detectives that petitioner called her at the hospital and said that he was sorry for raping her, yet the parties stipulated that one of those detectives would testify that Doe did not report that petitioner said that | |
| | Doe told the 9-1-1 operator that petitioner tried to rape her, yet testified that she did not tell Dr. Maloney that petitioner penetrated her anus and vagina because she was ashamed of the word rape | |
| | Doe identified petitioner's upper body tattoos, yet testified that she had not spent two hours in petitioner's car kissing him | |

Because a court reviewing a conviction may neither "substitute [its] own credibility assessment for that of the factfinder," nor "consider whether there is conflicting evidence to support other theories of the case," McCaffrey, 181 F.3d at 856 (7th Cir. 1999), this court may not consider whether the trial judge's factual findings were correct. Petitioner's remedy for the

trial judge's alleged "irrationality or error[s]" is sufficiency-of-the-evidence review. See Powell, 469 U.S. at 67. That review is objective: the court asks whether "any rational trier of fact" could have convicted. Jackson, 443 U.S. at 319 (emphasis in original).

Taken in the light most favorable to the State, the evidence was sufficient to convict petitioner of aggravated battery and aggravated criminal sexual assault. For aggravated battery, the State had to prove beyond a reasonable doubt that petitioner battered Doe, causing her great bodily harm. For sexual assault, the State had to prove that petitioner forcibly contacted Doe's anus with his penis and that he caused her bodily harm during the assault.

Doe's testimony alone was enough to convict. "[I]t is black letter law that testimony of a single eyewitness suffices for conviction even if 20 bishops testify that the eyewitness is a liar." Hayes v. Battaglia, 403 F.3d 935, 938 (7th Cir. 2005). Doe testified that petitioner forced her into the back seat, punched her in the face, choked her with both hands around her neck, turned her onto her stomach, pulled down her pants, opened a condom wrapper, and contacted her anus and vagina with his penis. That was enough for a rational factfinder to convict petitioner of both aggravated battery and aggravated criminal sexual assault—even without crediting the forensic and medical evidence that the State also presented.

Even if sufficiency-of-the-evidence review allowed courts to evaluate the factfinder's reasons, this court would not find that the trial judge's findings were unreasonable. The judge was entitled to credit some but not all of Doe's testimony. A factfinder may "pick and choose what to believe, not only from witness to witness, but also from statement to statement by one witness." United States v. Morris, 498 F.3d 634, 640–41 (7th Cir. 2007). The judge was left with reasonable doubt that petitioner contacted Doe's vagina, but was convinced that petitioner contacted Doe's anus with his penis. And the judge was convinced that petitioner beat her,

24

leaving her with bruises on her face, marks around her neck, swollen lips, a crooked tooth, three missing fingernails, and blood on her face, hands, and legs. All those inferences were supported by competent evidence.

Competing inferences and Doe's credibility were for the trial judge to consider. Maybe a different factfinder could rationally have rejected Doe's testimony completely. But assessing her credibility was the judge's job. Having done so and having considered the other evidence presented, the judge convicted petitioner of aggravated battery and aggravated criminal sexual assault. The only question for the state postconviction court was whether any rational factfinder could also have convicted petitioner of those offenses. In answering yes, the postconviction court neither unreasonably applied federal law nor unreasonably determined the facts presented at trial.

## 4.2    Misstatements of the evidence

Petitioner also alleges that the judge's factual findings included several misstatements (emphasis added):

| Misstatement | Evidence |
|---|---|
| "Her voice on the 9-1-1 tape . . . . indicates that she was being choked by the defendant[,] which was force . . . in addition to the rectal tearing. . . . [A]nd she did have a <u>tear</u> between her vagina and her anus." | Dr. Maloney testified that, "[T]here was a small, linear <u>abrasion</u> . . . close to the anus." |
| "The pelvic exam showed . . . a small linear abrasion <u>arising</u> from the anal area between the vagina and the anus." | Dr. Maloney testified that, "[T]he linear abrasion was actually at the top of where the rectum is or the anus is, so in between the vagina and the anus, but <u>arriving</u> from the anal area." |

| Misstatement | Evidence |
| --- | --- |
| "From the start, [Doe] stated the defendant penetrated her anus. Although Dr. Maloney said [Doe] attempted to penetrate her anus these words to me are not impeaching." | Doe: (1) told a detective, a police officer, and a 9-1-1 operator that petitioner tried to rape her without telling them that he penetrated her anus; and (2) told Dr. Maloney that petitioner attempted to penetrate her anus. |
| "The doctor testified that the injuries were consistent with what [Doe] had told him . . . . This was an opinion . . . that the abrasion was consistent with the penis to anus contact." | Dr. Maloney testified that Doe said that she was "unsure if it was the finger or the penis," but that there was "attempted penetration into her rectum." The State asked Dr. Maloney whether "the information that [Doe] had given [him] was consistent with the injuries that [he] saw on her that day." Dr. Maloney said, "Yes. I felt that they were consistent." |

As discussed, petitioner's sole remedy for the trial judge's alleged irrationality or factfinding errors is to ask a court to review the sufficiency of the evidence. He cannot attack the judge's alleged misstatements directly. Nor would doing so be fruitful—other than the statement about rectal "tearing," none of the judge's alleged misstatements necessarily conflicts with the evidence. There is no meaningful difference between an abrasion that "arises" from the anal area and one that "arrives" from it. There is no legal distinction between attempted and actual penetration so long as petitioner's penis contacted Doe's anus. There is nothing inconsistent about: (1) Doe stating that petitioner attempted to penetrate her rectum; (2) Doe having sustained an abrasion near her anus; (3) Dr. Maloney finding that Doe's abrasion was consistent with her statement; and (4) the trial judge inferring, from Dr. Maloney's finding, that petitioner attempted to penetrate Doe's anus with his penis and made contact with it.

The postconviction court rightly construed petitioner's complaints as challenges to the sufficiency of the evidence and denied relief accordingly. In so doing, the postconviction court

neither unreasonably applied clearly established federal law nor unreasonably determined the facts presented at trial.

## 5 Ineffective assistance of counsel (Claims 9, 11–30, and 36)

Petitioner's last substantive set of claims concerns the alleged ineffectiveness of his lawyers. (His only other claim—cumulative error—depends on the merits of his other claims.) The Sixth Amendment entitles criminal defendants to a reasonably effective lawyer—both at trial and on appeal. Strickland v. Washington, 466 U.S. 668, 687 (1984); Evitts v. Lucey, 469 U.S. 387, 396–97 (1985). Petitioner was denied his right to an effective lawyer if his lawyers performed deficiently and if their deficient performance prejudiced his defense. His lawyers performed deficiently if they acted "outside the wide range of professionally competent assistance." Strickland, 466 U.S. at 690. If petitioner's lawyers were deficient, their deficient performance prejudiced his defense if there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694.

Petitioner claims that his trial and appellate lawyers were ineffective for many reasons. The state postconviction court thought otherwise. It reasoned that none of the alleged errors "changed the outcome of the case, as the evidence was not closely balanced." This court agrees. Everyone at trial agreed that petitioner beat Doe and left her badly injured. Petitioner admitted that he bloodied her nose and that he threw her out of the car face-first into a pole. The question was whether he also raped her. Doe told the 9-1-1 operator that petitioner tried to rape her and she repeated that to multiple police officers and medical professionals. Dr. Maloney identified an abrasion between her vagina and anus and found her injuries consistent with her allegations. Petitioner called Doe at the hospital many times, begging her to forgive him and asking her not to call the police.

The trial was a swearing match that petitioner had little chance of winning even if no medical evidence had been presented. But he had a competent lawyer who made the best of bad facts. His lawyer convinced the judge to disbelieve some of Doe's testimony and to acquit petitioner of attempted murder and of the sexual assault counts alleging vaginal penetration. There was no reasonable probability of a better outcome, and the postconviction court was not unreasonable for so concluding. Petitioner's ineffective assistance of counsel claims do not entitle him to a writ of habeas corpus.

### 5.1    Failure to call witnesses

Petitioner first claims that his lawyer deficiently failed to introduce the testimony of: (1) Detective Fanning; and (2) six witnesses who knew that petitioner disliked condoms.

**Detective Fanning.** Petitioner procedurally defaulted his claim that his lawyer should have called Detective Fanning. Under state law, petitioner was required to attach to his postconviction petition "affidavits, records, or other evidence supporting its allegations or shall state why the same are not attached." 725 ILCS 5/122-2; see Thompkins v. Pfister, 698 F.3d 976, 986–87 (7th Cir. 2012) (recognizing Illinois's affidavit rule as an independent and adequate state law ground for denying relief). The postconviction court rejected petitioner's claim because he did not file an affidavit from Fanning or explain why he could not do so. Because the postconviction court rejected the claim based on Illinois's affidavit rule, petitioner must show cause for failing to comply with it. See Thompkins, 698 F.3d at 987. Petitioner has not done so. He says he tried diligently to get Fanning's police report from various government bodies— maybe so, but he did not tell that to the postconviction court. His failure to do so bars his claim.

**Witnesses who knew that petitioner disliked condoms.** Petitioner's claim about witnesses who knew about his dislike for condoms is frivolous. Petitioner's lawyer reasonably

believed that petitioner's contempt for condoms was "the last thing he need[ed] to worry about"—the defense theory was that he got the better of Doe in a mutual fight but never tried to rape her; his dislike for condoms would have done nothing to bolster that theory. Declining to call petitioner's witnesses was neither deficient performance nor prejudicial to his defense.

### 5.2    Failure to effectively cross-examine Doe and Dr. Maloney

Petitioner next claims that his lawyer ineffectively cross-examined Doe and Dr. Maloney.

**Doe.** Petitioner argues that his lawyer: (1) elicited damaging testimony from Doe that petitioner penetrated her anus; and (2) failed to adequately impeach Doe. Both arguments are belied by the record. Doe had already testified on direct examination that petitioner's penis "touched" and was "able to penetrate" her anus. And petitioner's lawyer impeached her to the point that the trial judge acquitted petitioner of the counts alleging vaginal penetration. The points on which petitioner insists his lawyer should have pressed Doe harder are not so potent that they overcome the "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." <u>Strickland</u>, 466 U.S. at 689. Petitioner's lawyer did not perform deficiently. Nor was there a reasonable probability of a different outcome had he adopted petitioner's preferred cross examination topics.

**Dr. Maloney.** Petitioner also faults his lawyer for cross-examining Dr. Maloney poorly. He argues that his lawyer: (1) failed to effectively cross-examine Dr. Maloney; and (2) failed to investigate the discrepancy in Dr. Maloney's physician's notes. These arguments, too, are belied by the record. Petitioner's lawyer was not deficient: he knew about the discrepancy in Dr. Maloney's reports years before trial and used that discrepancy on cross examination. Nor does petitioner offer any explanation for how a more thorough investigation could have changed the trial's outcome—or even the course of Dr. Maloney's cross examination.

### 5.3    Failure to raise arguments during closing

Petitioner complains about two arguments that his lawyer did not raise during closing. He argues that his lawyer ineffectively: (1) failed to object to the prosecutor's "fissure" misstatement; and (2) failed to ask the judge to consider lesser-included offenses.

**Failure to object to the prosecutor's "fissure" misstatement.** Petitioner's "fissure" claim is meritless. The prosecutor's misstatement was immaterial and did not come close to depriving petitioner of a fair trial. Nor is there any reason to think that it affected the outcome—the State needed only prove that petitioner's penis contacted Doe's anus. Declining to object to the prosecutor's minor misstatement was neither deficient performance nor prejudicial to petitioner's defense.

**Failure to ask the judge to consider lesser-included offenses.** Petitioner's claim about lesser-included offenses is equally meritless. The case was tried to judge who presumably knew the law and needed no instruction to convict on a lesser-included offense. Not asking the trial judge to consider lesser-included offenses was neither deficient performance nor prejudicial to petitioner's defense.

### 5.4    Failure to raise claims after trial

The rest of petitioner's ineffective assistance claims concern his lawyers' omissions after trial. He argues that: (1) his trial lawyer failed to adequately attack the sufficiency of the evidence when moving for a new trial; (2) his appellate lawyer failed to raise the same Brady claims that he raises here; and (3) his postconviction lawyer failed to amend his state court postconviction petition, which petitioner prepared without a lawyer.

**Sufficiency of the evidence.** Attacks on the sufficiency of the evidence would have been meritless for the reasons already discussed: there was plenty of evidence to convict. The

postconviction court reasonably concluded that had petitioner's arguments been made, there was no reasonable probability of a better outcome.

**Brady.** So too with petitioner's Brady claims—they would have been meritless for the reasons discussed. Declining to raise those claims on appeal was neither deficient performance nor prejudicial to petitioner's defense.

**Amended petition.** Petitioner's claim that his state postconviction lawyer should have amended his petition is barred by 28 U.S.C. § 2254(i): "The ineffectiveness or incompetence of counsel during Federal or State collateral post-conviction proceedings shall not be a ground for relief in a proceeding arising under section 2254."

## 6    Cumulative error (Claim 32)

Petitioner's final claim is that the cumulative effect of his trial's errors denied him due process of law. Due process is denied when the collective impact of otherwise-harmless errors "so infect[s] the [factfinder's] deliberation" that the criminal defendant is deprived of a "fundamentally fair trial." Alvarez v. Boyd, 225 F.3d 820, 824–25 (7th Cir. 2000). The state postconviction court effectively rejected petitioner's cumulative error claim when it held that all his claims were frivolous.

The postconviction court's rejection of petitioner's cumulative error claim was based neither on an unreasonable application of clearly established federal law nor on an unreasonable determination of the facts presented at trial. There was but a single error: the prosecutor's misstatement about Doe's anal "fissure." That misstatement did not "so infect[ ] the trial with unfairness as to make the resulting conviction a denial of due process." DeChristoforo, 416 U.S. at 643. That conclusion remains undisturbed by petitioner's other claims, which are all meritless.

## CONCLUSION

Petitioner Antoine Moseley's application for a writ of habeas corpus (Doc. 1) is denied.

Because petitioner has not made a substantial showing that his constitutional rights were denied,

the court declines to issue a certificate of appealability. Petitioner's motion for status (Doc. 44) is

denied as moot.

**ENTER:**      **August 19, 2019**

**Robert W. Gettleman**
**United States District Judge**